# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JOSETTE BAUER, CHERYL KOBLESKI, and RAFAEL CAJIGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>NORTHLAND GROUP, INC.,<br><br>　　　　　Defendant. | Case No.: 17-cv-1520<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiffs Jossette Bauer, Cheryl Kobleski, and Rafael Cajigas are each individual who reside in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiffs are "consumers" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from them debts incurred for personal, family, or household purposes.

5. Defendant Northland Group, Inc., ("Northland") is a foreign corporation with its principal offices located at 7831 Glenroy Road, Suite 250, Edina, MN 55439.

6. Northland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

3. Northland is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Northland is a debt collector as defined in 15 U.S.C. § 1692a.

### *Bauer Claims*

4. On or about November 11, 2016, Northland mailed a debt collection letter to Plaintiff Bauer regarding an alleged debt owed to "US Bank National Association" ("US Bank"). A copy of this letter is attached to this complaint as Exhibit A.

5. Upon information and belief, the alleged debt that Northland was attempting to collect was a consumer credit card account, used only for personal, family, or household purposes.

6. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

7. Upon information and belief, Exhibit A is a form debt collection letter used by Northland to attempt to collect alleged debts.

8. Exhibit A contains the following text:

> Despite many opportunities to resolve this matter, the account remains unpaid. We understand the balance may seem to be out of your reach or out of your budget. You can make payments of $161.18 a month and pay down your amount due while keeping open the option of saving money in the future by settling on the balance. Payments must be no more than 30 days apart. We are not obligated to renew this offer. Please make payments by due dates below. If you need additional time to respond to this offer, please contact us. Coupons are attached for your first three payments and we will send additional coupons if you request them. Upon completion of the payment plan, a letter will be sent confirming the above referenced account has been resolved.
>
> This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.
> This communication is sent to you by Northland Group, Inc., a debt collector and a member of ACA International.

9. On or about December 23, 2016, Northland mailed another debt collection letter to Plaintiff Bauer regarding the alleged debt owed to "US Bank National Association." A copy of this letter is attached to this complaint as Exhibit B.

2

10. Exhibit B is of the same form as Exhibit A, containing substantially similar language as the text specified in paragraph 8 of this complaint; the monthly payment proposed in Exhibit B, however, is $80.59.

11. On or about January 27, 2017, Northland mailed yet another debt collection letter to Plaintiff Bauer regarding the alleged debt owed to "US Bank National Association." A copy of this letter is attached to this complaint as Exhibit C.

12. Exhibit C is of the same form as Exhibit A and Exhibit B, containing substantially similar language, but with a proposed monthly payment of $322.36.

13. By demanding that Plaintiff Bauer remit installment payments according to a set schedule in order to "pay down the amount due while keeping open the option of saving money in future," Exhibits A-C imply that a future settlement offer would only be available to Plaintiff Bauer if payments are made according to such a schedule.

14. On information and belief, Northland and US Bank would agree to settle the account for an amount less than total balance at any time.

15. Exhibits A-C are thus misleading insofar as they imply that a future settlement only be available to the consumer if payments are made according to such a schedule.

16. Plaintiff Bauer was confused by Exhibits A-C.

17. The unsophisticated consumer would be confused by Exhibits A-C.

18. Plaintiff Bauer had to spend time and money investigating Exhibits A-C and the consequences of any potential responses to Exhibits A-C.

19. Plaintiff Bauer had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-C.

3

Case 2:17-cv-01520-LA   Filed 11/03/17   Page 3 of 20   Document 1

## *Kobleski Claims*

20. On or about December 26, 2016, Northland mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit D.

21. Upon information and belief, the alleged debt that Northland was attempting to collect was a consumer credit card account, used only for personal, family, or household purposes.

22. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit D is a form debt collection letter used by Northland to attempt to collect alleged debts.

24. Upon information and belief, Exhibit D is the first written communication that Northland sent to Plaintiff regarding the alleged debt to which Exhibit D refers.

25. Exhibit D contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

26. The above language in Exhibit D is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

27. Exhibit D also includes a threat of legal action:

At this time, CAPITAL ONE BANK (USA), N.A. has informed us that your account meets its requirements for possible legal action. No final decision about possible legal action on this account will be made until more than 30 days after your receipt of this notice to allow time for you to exercise your rights set forth below.

4

28. The above language is false, misleading and confusing to the unsophisticated consumer. Northland has no basis to make such claims.

29. Capital One is the eighth largest bank in the United States. https://en.wikipedia.org/wiki/Capital_One. In addition to credit cards, it specializes in home loans, auto loans, banking and savings products.

30. Northland has no basis to assert that Capital One has determined that Plaintiff's account meets Capital One's requirements for possible legal action.

31. Upon information and belief, Northland has no input in, or inside information into Capital One's business practices with respect to lawsuits or otherwise.

32. Lawsuits are not the "regular course" for Capital One. Upon information and belief, Capital One sends the vast majority of post charge-off, delinquent accounts to collection agencies and/or to debt purchasers, and also continues ordinary, telephonic and direct mail collection efforts on its own behalf, instead of initiating legal action.

33. Upon information and belief, the decision of how to collect consumers' accounts is generally made months after letters in the form of Exhibit D is sent to customers, and is often made automatically, by computer, with little or no human input.

34. The statements about a possible lawsuit and that "no final decision about possible legal action on this account will be made more than 30 days after your receipt of this notice" together falsely indicate to the unsophisticated consumer that litigation is imminent.

35. Upon information and belief, Capital One has not filed a lawsuit against Plaintiff. A search of CCAP shows no civil actions filed by Capital One against Plaintiff Kobleski in Wisconsin, almost one year after Defendant sent Exhibit D to Plaintiff.

36. <u>Exhibit D</u> also contains the following settlement offer:

> We are willing to reduce your balance by offering you a settlement. Please note, we are not obligated to renew this offer. Upon receipt and clearance of $1,893.66, a letter will be sent confirming that the above referenced account has been resolved. This offer does not affect your rights set forth below.

37. <u>Exhibit D</u> is confusing to the unsophisticated consumer because it demands a settlement payment within the validation period or shortly thereafter and threatens legal action if the consumer does not pay or dispute the debt within 30 days, but does not explain how the validation notice, settlement offer and threat of legal action fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

38. <u>Exhibit D</u> is unclear whether the process leading to legal action would proceed beyond "30 days after your receipt of this notice," even if the consumer disputes the debt in writing.

39. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should clarify whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

40. Defendant did not include explanatory language in <u>Exhibit D</u>, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

41. The unsophisticated consumer would have no idea how to a) seek verification of the debt, b) preserve the settlement offer in <u>Exhibit D</u>, and c) avoid legal action even if the consumer submits a written dispute.

6

42. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

43. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. He may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

44. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

45. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer has likely expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

46. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

47. Additionally, Exhibit D includes the following text:

> Total Amount of Interest Accrued Since Charge-Off: $0.00
> Total Amount of Non-Interest Fees Since Charge-Off: $0.00

7

48. The credit card account identified in Exhibit D was in default, closed, and as the letter indicates, charged off by Capital One before Northland sent Exhibit D to Plaintiff.

49. Exhibit D threatens to collect "Interest" and "Non-Interest Fees." Although the amounts of each in Exhibit D is $0.00, the letter implies that there could be interest or other costs added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

50. Upon information and belief, neither Capital One nor Northland actually add interest and costs to consumer collection accounts.

51. Furthermore, there is no explanation in the letter as to what the "Non-Interest Fees" are or would be.

52. The unsophisticated consumer interprets references to interest and fees in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

53. Plaintiff Kobleski was confused by the nebulous reference on Northland's letter to "Non-Interest Fees" and has no idea what those charges are, potentially could be, or whether they are legitimate.

54. The unsophisticated consumer would be confused by the nebulous reference on Northland's letter to "Non-Interest Fees" and would have no idea what those charges are, potentially could be, or whether they are legitimate.

55. Further, Northland could not add any collection fees to Plaintiff Kobleski's account.

56. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

57. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

58. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

59. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

60. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

61. Because credit card transactions are consumer credit transactions, Exhibit A, with its nebulous statement about "Non-Interest Fees," falsely states or implies that Northland has a right to add collection fees to the debt.

62. Even if a provision of any agreement between Plaintiff Kobleski and the original creditor would purport to permit Northland to impose a collection fee, the WCA prohibits such

9

fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

63. The alleged debt has been charged off by Capital One. There are no fees that could conceivably be added to Plaintiff Kobleski's alleged debt.

64. Plaintiff Kobleski was confused by Exhibit D.

65. The unsophisticated consumer would be confused by Exhibit D.

66. Plaintiff Kobleski had to spend time and money investigating Exhibit D and the consequences of any potential responses to Exhibit D.

67. Plaintiff Kobleski had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit D.

### *Cajigas Claims*

68. On or about March 11, 2017, Northland mailed a debt collection letter to Plaintiff Cajigas regarding an alleged debt owed to "Capital One, N.A." A copy of this letter is attached to this Complaint as Exhibit E.

69. The alleged debt referenced in Exhibit E was incurred for personal, family, or household purposes – specifically, a consumer credit card.

70. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff Cajigas inserted by computer.

71. Exhibit E was the first letter Plaintiff Cajigas was sent by Northland regarding this alleged debt.

10

72. <u>Exhibit E</u> contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

73. The text in Northland's letter to Plaintiff Cajigas reflects the language required by 15 U.S.C. §§ 1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

74. Immediately following the language reproduced in paragraph 47 of this complaint, however, Exhibit E additionally contains the following text:

> Should you have any questions regarding this account, please feel free to call us at 866-204-9449 ext 3718. We look forward to hearing from you.

75. The additional language reproduced in the previous paragraph overshadows the FDCPA debt validation notice.

76. <u>Exhibit E</u> fails to clearly and unambiguously inform the unsophisticated consumer that, in order to invoke his or her right to require Northland to cease most collection activities until they provide verification of the debt, the consumer must make the request in writing. 15

11

U.S.C. § 1692g(a)(4). Instead, it tells the consumer to "Should you have any *questions* regarding this account, *please feel free to call us*…." (emphasis added).

77. Many "questions regarding this account" a consumer would have about an alleged debt or a collection letter, including but not limited to whether the amount of the debt is correct and whether the debt is owed at all, are "disputes" *See DeKoven v. Plaza Associates*, 599 F.3d 578, 582 (7th Cir. 2010); *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

78. Northland's language falsely indicates that the easier option of calling Northland with "questions" is equivalent to sending "questions" (i.e. disputes) in writing, when it is not. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 738 (N.D. Ill. 2003).

79. The practical effect of the request to call Northland is to discourage consumers from disputing debts in writing.

80. An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

81. Northland did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

82. The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor

12

Case 2:17-cv-01520-LA    Filed 11/03/17    Page 12 of 20    Document 1

gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

83. Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7, 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

84. For purposes of Plaintiff Cajigas' claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

85. Northland's statement that the consumer could write or call with questions about a debt overshadows the validation notice. 16 U.S.C. § 1692g.

13

86. Plaintiff Cajigas was confused by Exhibit E.

87. The unsophisticated consumer would be confused by Exhibit E.

88. Plaintiff Cajigas had to spend time and money investigating Exhibit E and the consequences of any potential responses to Exhibit E.

89. Plaintiff Cajigas had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit E.

## *FDCPA Claims*

90. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

91. 15 U.S.C. § 1692e(10) prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken."

92. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

93. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

94. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information

14

concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

95. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

15

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

96. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

97. Count I is brought on behalf of Plaintiff Bauer.

98. <u>Exhibits A-C</u> are misleading because they contain language that falsely implies that a future settlement only be available to Plaintiff Bauer if payments are made according to a set schedule.

99. In fact, Northland and US Bank would agree to settle the account for an amount less than total balance at any time.

100. Defendant therefore violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT II – FDCPA

101. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. Count II is brought on behalf of Plaintiff Kobleski.

103. <u>Exhibit D</u> falsely threatens that Capital One may institute possible legal action against Plaintiff.

104. In reality, Northland has no basis to threaten that Capital One may sue. Northland has no influence in Capital One's litigation strategy.

105. Defendant therefore violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT III -- FDCPA

106. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

107. Count III is brought on behalf of Plaintiff Kobleski.

108. The settlement offer in Exhibit D conflicts with and overshadows the debt validation notice, in that it makes a limited-time settlement offer during the validation period or shortly thereafter, but does not explain how the validation notice and settlement offer fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

109. The references in Exhibit D to "Interest" and "Non-Interest Fees" are false, misleading, and confusing because it implies such charges may be added in the future.

110. Neither Northland nor Capital One are entitled to any fee and do not add interest to accounts such as Plaintiff's.

111. The unsophisticated consumer would be confused by the nebulous references in Exhibit D to "Non-Interest Fees" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

112. Defendant therefore violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g, 1692g(a), and 1692g(b)

## COUNT IV – FDCPA

113. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114. Count IV is brought on behalf of Plaintiff Cajigas.

115. Exhibit E is misleading because it implies that a consumer may invoke his or her right to obtain verification of the debt without making the request in writing when, in fact, a

consumer who calls Northland has not effectively invoked her verification rights. See 15 U.S.C. § 1692g(b).

116. The additional text included in <u>Exhibit E</u> thereby overshadows the notice required by 15 U.S.C. §1692g(a).

117. Defendant therefore violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g, 1692g(a), and 1692g(b).

## **CLASS ALLEGATIONS**

118. Plaintiffs bring this action on behalf of a three proposed classes.

119. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibits A-C</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between November 3, 2016 and November 3, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Bauer is the designated representative for Class I.

120. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit D</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between November 3, 2016 and November 3, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Kobleski is the designated representative for Class II.

121. Class III consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit E</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between November 3, 2016 and November 3, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Cajigas is the designated representative for Class III.

122. The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class.

123. There are questions of law and fact common to the members of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant complied with 15 U.S.C. § 1692e and 1692g.

124. Plaintiffs' claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

125. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

126. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

127. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 3, 2017　　　　　　　　**ADEMI & O'REILLY, LLP**
　　　　　　　　　　　　　　　　By:　/s/ John D. Blythin
　　　　　　　　　　　　　　　　　　John D. Blythin (SBN 1046105)
　　　　　　　　　　　　　　　　　　Mark A. Eldridge (SBN 1089944)

19

Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com